IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KELLY LYNETTE MITCHELL,                    No. 2:12-CV-0358-CMK

        Plaintiff,

     vs.                                                MEMORANDUM OPINION AND ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 19).

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on May 14, 2009. In the application, plaintiff claims that disability began on April 24, 2009. Plaintiff claims that disability is caused by a combination of "bipolar, schizophrenic, schizoaffective." Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 5, 2010, before Administrative Law Judge ("ALJ") William C. Thompson, Jr. In a November 24, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): bipolar disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work except she must avoid heights; she can perform simple, repetitive tasks and can have only restricted contact with public and coworkers;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on December 28, 2011, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ erred by failing to articulate sufficient reasons for rejecting the opinion of examining psychiatrist Patrick Wong, M.D.; (2) the ALJ failed to fully account for his own findings of moderate limitations in concentration, persistence, and pace; (3) the ALJ failed to properly consider lay witness evidence; and (4) the ALJ failed to establish that there is other work which exists in the national economy and which plaintiff can perform.

### A.     Evaluation of Dr. Wong's Opinion

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

(9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to Dr. Wong, the ALJ stated:

> Patrick Wong, M.D., a state agency psychiatrist, examined the claimant on August 6, 2009. She stated that she experiences mood swings and racing thoughts, though these were improved since her hospitalization. The claimant was alert and oriented in all spheres and her speech was logical and goal oriented. She demonstrated good social reciprocity and her attention, concentration, and memory were all intact. Based on his examination, Dr. Wong diagnosed the claimant with bipolar disorder,

> depressed phase, mild and noted that although she has a history of schizoaffective disorder, she does not experience psychotic symptoms between episodes. He assigned her a GAF of 60 [Ex. 1F].

\* \* \*

> Dr. Wong determined that the claimant's ability to carry out simple instructions remains intact, though her ability to take instructions is mildly diminished. She is moderately limited in her ability to relate to coworkers and the public, though workplace stress is likely to cause a severe impairment in this area occasionally. She will have moderate difficulty adapting to workplace stressors and the probability that her ability to function will deteriorate due to typical workplace stressors is high [Ex. 1F]. Although Dr. Wong examined the claimant, he did so only a few months after the claimant was released from Sierra Vista Psychiatric Hospital. The claimant has continued to improve since that time. Dr. Wong's opinion is not entirely consistent with the medical evidence of record or with the findings of claimant's treating psychiatrist. Therefore, I give reduced weight to this opinion.

The court does not find any error. As indicated above, the ALJ properly assigns more weight to the opinions of treating professionals than to the opinion of a one-time examining professional, such as Dr. Wong. Here, the ALJ did exactly that by reducing the weight of Dr. Wong's opinion in light of the findings of plaintiff's treating providers. Specifically, as noted by the ALJ, plaintiff's treating providers recorded the following:

> On April 22, 2009, the claimant presented in the Crisis Department at San Joaquin County Mental Health. She had recently been sent home from work because she was too confused to function. She did not know the day or the date and had refilled her medications, but had not taken them. She was unable to follow directions or to provide self care [Ex. 12F at 10].

> Three days later, the police brought her to the emergency room after she was found wandering the streets. She was disorganized, guarded, and did not comply with the intake assessment. The claimant was transferred to the Sierra Vista Psychiatric Hospital where she remained until May 5, 2009. During the initial portion of her stay, the claimant experienced bizarre behavior, but she steadily improved with medication. She was diagnosed with schizoaffective disorder, bipolar type. Upon discharge, she was alert and oriented in all spheres and her insight and judgment were fair. Her thought process was goal directed and normal and she was not experiencing any hallucinations. Her behavior was appropriate and she appeared cognitively intact, though she was still a bit guarded. The discharging physician assigned the claimant a Global Assessment of Functioning ("GAF") score of 60-65 [Ex. 3F].

\* \* \*

On May 6, the claimant completed an intake assessment for her intensive outpatient program at Kaiser. At that time, she was alert and oriented in all spheres, but her memory and fund of knowledge were limited. On May 13, she was examined by Alice Park, M.D., who became her treating psychiatrist while she was enrolled in the program. Dr. Park noted that the claimant had been diagnosed with schizophrenia at age 30 and had been receiving treatment at San Joaquin County Mental Health. During this evaluation, she was fully oriented and her attention and concentration appeared normal. Her memory was intact. Dr. Park diagnosed her with schizoaffective disorder [Ex. 6F at 31-34 and 39-40].

The claimant attended the intensive outpatient program until mid June and continued to see Dr. Park. During those sessions, she complained of anxiety, depression, and trouble sleeping. By June 30, Dr. Park noted that the claimant appeared to be at baseline, though she still experienced some auditory hallucinations. She was pleasant and cooperative and her behavior was normal. Her memory and concentration were intact and her insight and judgment were good. Dr. Park assigned the claimant a GAF of 61-70, which is consistent with mild symptoms [Ex. 6F].

The claimant stopped treatment at Kaiser and returned to San Joaquin Mental Health in July 2009. At that time, she reestablished care with her previous psychiatrist, Saba Rizvi, M.D. She has continued to See. Dr. Rizvi approximately once a month since that time. During their first appointment, Dr. Rizvi diagnosed the claimant with bipolar disorder, not otherwise specified and increased her medications. She noted that the claimant was attending AA and NA meetings. In August 2009, the claimant stated that she was still hearing voices but that she felt about sixty percent back to normal. By November 2009, she was still hearing voices, but was able to ignore them. She appeared preoccupied, though her thought process was linear. She complained of a mild tremor in her right hand [Ex. 13F]. In December, she began to experience increased anxiety and a lack of motivation and in January 2010, Dr. Rizvi referred the claimant to an individual therapist and increased her medications. By February, the claimant was feeling better and was having less trouble sleeping. She had not followed through on the therapy referral, but had started to attend group therapy sessions. Since February, the claimant has continued to complain on and off of problems with motivation and anxiety, though she had remained able to care for herself, her daughter, and her house [Ex. 17F].

From this treatment history, it is apparent that plaintiff's symptoms were improved with compliance with medication. In fact, it appears that non-compliance with medication precipitated her hospitalization in 2009. Moreover, it is noteworthy that Dr. Rizvi, who treated plaintiff <u>after</u> her hospitalization, did <u>not</u> diagnose schizoaffective disorder and was able to treat plaintiff with monthly therapy sessions and medication. Dr. Wong's more extreme

1 work-related limitations are, as the ALJ found, inconsistent with this history.

      **B.**    **Concentration, Persistence, and Pace**

      Regarding concentration, persistence, and pace, the ALJ stated:

> With regard to concentration, persistence, or pace, the claimant has moderate difficulties. A state agency psychiatrist noted that her concentration for conversation was intact and that her memory was normal. The claimant testified, however, that she has trouble concentrating and sometimes forgets what she is reading. She also experiences some auditory hallucinations, which may interfere with her ability to concentrate. Thus, the claimant has moderate difficulties with concentration, persistence, and pace.

Citing the ALJ's residual functional capacity assessment, plaintiff argues that the ". . .ALJ failed to adequately explain how a limitation to simple instructions would fully account for the acknowledged moderate difficulties with concentration."

      The court finds no error. While plaintiff may have moderate difficulties, as noted by the ALJ the state agency psychiatrist observed that, functionally, plaintiff's memory and concentration were normal. As defendant correctly notes, the special analysis for mental disorders, which includes an assessment of concentration, persistence, and pace, is a severity analysis which is distinct from the functional analysis at step five of the sequential evaluation. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). The Ninth Circuit has held that a limitation to, as here, simple work adequately captures moderate limitations in concentration, persistence, and pace. See Stubbs-Danielson v. Astrue, 530 F.3d 1169, 1173-76 (9th Cir. 2008).

      **C.**    **Lay Witness Evidence**

      In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony

of lay witnesses, he must give reasons that are germane to each witness." <u>Dodrill</u>, 12 F.3d at 919.  ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  See <u>Valentine v. Commissioner Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

        Plaintiff argues that the ALJ failed to properly evaluate a statement provided by Sally Lofthus, plaintiff's former employer.  As to Ms. Lofthus, the ALJ stated:

> On September 20, 2010, Sally M. Lofthus, a former employer of the claimant, provided a statement regarding the claimant's job performance.  Ms. Lofthus indicated that the claimant had difficulty concentrating on her job duties and was unable to complete her assigned tasks.  She opined that the claimant is not employable.  Although Ms. Lofthus's opinion is not medical in nature, I have considered it.  Whether an individual is capable of working, however, is an administrative conclusion that is reserved to the Commissioner. . . .  Therefore, I assign no weight to this opinion.

Plaintiff argues:

> While the ALJ claimed he considered Ms. Lofthus's opinion, he assigned it "no weight," stating that "[w]hether an individual is capable of working, however, is an administrative conclusion that is reserved to the Commissioner. . . ." (Tr. 25-26).  While this may be true, that is not a proper reason for rejecting Ms. Lofthus's opinion that Ms. Mitchell had difficulty concentrating on her job duties and completing her assigned tasks, which are nonexertional limitations which corroborate the medical evidence. . . .

        Defendant argues that any error was harmless.  The court agrees.  The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts.  For example, in <u>Stout v. Commissioner of Social Security</u>, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Id.</u> at 1056; <u>see also</u> <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 885 (9th Cir. 2006) (citing <u>Stout</u>, 454 F.3d at 1056).  Similarly, in

Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.
>
> Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." See id. at 1162. The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate*

*nondisability determination*."

> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

In the specific context of lay witness evidence, the Ninth Circuit held in Molina v. Astrue, 674 F.3d 1104, 1114-15 (9th Cir. 2012): "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss lay witness testimony to be prejudicial per se." As in Molina, plaintiff does not challenge the ALJ's adverse credibility finding. Because Ms. Lofthus and plaintiff testify as to the same non-exertional limitations in plaintiff's ability to concentrate and complete tasks, and because plaintiff does not challenge the ALJ's assessment of her credibility as to those limitations, any error with respect to Ms. Lofthus' similar testimony is harmless. See Ramirez v. Astrue, 803 F. Supp. 2d 1074, 1079 (C.D. Cal. 2011).

/ / /

### D. Vocational Finding

The ALJ made the following vocational finding:

> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. . . .

According to plaintiff, the ". . .ALJ committed reversible error by not including in his finding [as to plaintiff's residual functional capacity] that Ms. Mitchell has *moderate* limitations in concentration, persistence, or pace." Plaintiff also argues that the ALJ erred by failing to include any limitations opined by Dr. Wong.

The ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

///

In this case, the court does not find any error. As discussed above, the ALJ did not err in weighting Dr. Wong's opinion. Further, the court also finds that the ALJ did not err with respect to assessment of plaintiff's allegations of difficulty concentrating and completing tasks because, as also discussed above, plaintiff does not challenge the ALJ's adverse credibility finding. Given that the ALJ relied on vocational expert testimony which was based on an accurate hypothetical question, the ALJ's vocational finding must be affirmed.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 16) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 19) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  September 25, 2013

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE